Case 1:20-cv-04052-ILG Document 28 Filed 03/24/22 Page 1 of 13 PageID #: 563

**FILED**
**IN CLERK'S OFFICE**
**U.S. District Court E.D.N.Y.**
**03/24/2022**
**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KHALILUR RAHMAN, ET AL.,

                           Plaintiffs,

    - against -

U.S. DEPARTMENT OF HOMELAND
SECURITY, ET AL.,

                          Defendants.
-----------------------------------------------------------x

MEMORANDUM AND ORDER
20-CV-4052

**GLASSER**, Senior United States District Judge:

Plaintiffs Khalilur Rahman ("Rahman"), a national of Bangladesh to whom the United States granted asylum in 2014; his wife Maria Akter; and their children Fatema Akter and Farjahan Akter (collectively, "Plaintiffs") seek (i) a declaration that Rahman's applications for lawful permanent residence and for his wife and children to join him in the United States were denied contrary to the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and (ii) attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504; 28 U.S.C. § 2412(b). Compl. 7–10, ECF No. 1. Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), USCIS Texas Service Center, and U.S. Attorney General (collectively, "Defendants"[1]) have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56(a). ECF No. 16. For the reasons stated below, Defendants' motion to dismiss is **GRANTED** and Defendants' motion in the alternative for summary judgment is **DENIED AS MOOT**.

---

[1]     The Complaint listed then-U.S. Attorney General William Barr as a defendant, plus the then-heads of each institutional Defendant. Compl. 1–3.

## BACKGROUND

The following background facts are drawn from the Complaint and its attached exhibits. Unless noted, these facts are undisputed. The Court assumes their truth in assessing Defendants' motion to dismiss. *See Melendez v. City of New York*, 16 F.4th 992, 996 (2d Cir. 2021).

Rahman is a national of Bangladesh who currently resides in the Eastern District of New York. In 2012, Rahman entered the United States without authorization near Hidalgo, Texas. DHS subsequently issued Rahman a Notice to Appear, initiating removal proceedings against him.

In 2013, Rahman applied for asylum, arguing that his membership in the Bangladesh Nationalist Party ("BNP") made him unsafe in Bangladesh. In his asylum application, Rahman recounted joining Jatyabadi Chhatra Dal ("JCD"), a student group associated with the BNP, in 2001. In his application, Rahman also recalled the environment in which JCD then operated:

> There were always confrontations between ideologically different student groups for influence on campus. We were always fighting turf battles. BNP and AL (Awami League) are the two largest political parties in Bangladesh, as such, their respective students' wings [JCD] and Bangladesh Chatro League are the largest student unions and arch rivals. Consequently, there was always confrontation between rival groups that often turned violent. . . . Politics turned into a blood sport.

Compl. Ex. B, at 19 (quoting Rahman's asylum application). Rahman went on to explain that he became a leader of JCD at Khalilur Rahman Degree College, where he "was very active with recruiting students into the party, helping new comers [*sic*] with [the] admission process, and other tasks [he] was assigned to by party leadership." *Id.* Rahman was promoted to the position of publicity secretary, in which role he "was in charge of publicizing the party policies, sending meeting notices, hanging posters, making public announcements through loud speakers, etc." *Id.* Subsequently, "the BNP . . . offered [Rahman] membership which [he] accepted." *Id.* Rahman continued to participate in BNP activities after entering the United States. *Id.* at 20.

In June 2014, an immigration judge held a hearing on Rahman's asylum application, which was recorded.[2] The judge asked Rahman whether he ever "engaged in violence against other party members," to which Rahman answered, "No, I was not involved in any kind of conflict . . . ." Pls.' Mems. Opp'n Mot. Dismiss or Summ. J. ("Pls.' Mems.") 3, ECF Nos. 20–21 (transcribing Audio Recording: Rahman, Case No. A205-289-190 (Immigr. Ct. June 11, 2014), *see* ECF No. 13).[3] At a later hearing in November 2014, also recorded, the judge granted Rahman's application for asylum orally and issued a *pro forma* written order confirming that decision. *See* Compl. Ex. A.

In 2016, Rahman applied to adjust his status from a person granted asylum (i.e., asylee) to lawful permanent resident. While that application was pending, in 2019, Rahman also applied for permission for his wife and children to join him in the United States.[4] USCIS denied both of Rahman's applications in August 2020, citing his links to JCD and the BNP. USCIS made three determinations that underpinned these denials. First, JCD and the BNP constituted "Tier III" terrorist organizations under subclause (vi)(III) of 8 U.S.C. § 1182(a)(3)(B). Compl. Ex. B, at 26. Second, Rahman's recruitment activities for JCD and the BNP amounted to terrorist activity under subclause (iv)(V)(cc). *Id.* Third, Rahman's "other activity" on their behalf constituted material support to terrorist organizations under subclause (iv)(VI)(dd). *Id.* Based on those determinations, USCIS found Rahman legally inadmissible—and denied his application for permanent residence—for having engaged in terrorist activity and continuing to be a member of a terrorist organization. *Id.* at 28 (citing subclauses (i)(I) and (i)(VI) of 8 U.S.C. § 1182(a)(3)(B)). USCIS

---

[2]  The Complaint relies on this and other recordings of immigration proceedings. *See* Compl. 5, 8. They are, therefore, integral to the Complaint. *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).

[3]  In opposition to Defendants' motion, Plaintiffs filed two memoranda of law that are substantively identical. *See* ECF Nos. 20–21. The Court cites to those two memoranda jointly as "Pls. Mems."

[4]  Rahman's 2019 application seeking permission for his wife and children to join him was his second such application. Compl. 27. The record does not disclose when he first applied.

then denied Rahman's application for his wife and children to join him because they were related to a person deemed inadmissible on terrorism-related grounds. *See* Compl. Ex. C, at 45, 60, 75 (citing subclause (i)(IX) of 8 U.S.C. § 1182(a)(3)(B)).

There is no indication in the record that Rahman petitioned USCIS to reopen or reconsider the denial of his applications in August 2020, nor that he appealed USCIS's decision to the Board of Immigration Appeals ("BIA"). In September 2020, Plaintiffs initiated this action.

## DISCUSSION

### I. Motion to Dismiss

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under this rule "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, a court considers all allegations "in the light most favorable to plaintiffs," *Melendez*, 16 F.4th 992 at 996, but does not assume the truth of a complaint's legal conclusions, *Iqbal*, 556 U.S. at 678. A "district court is normally required to look only to the allegations on the face of the complaint," though it may also "consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice . . . ." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

### A. APA Claims

The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" that it finds to be "arbitrary, capricious, an abuse of discretion, or

4

otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A–B).

Under the statutory scheme relevant here, the immigration judge considering an asylum application determines whether the applicant credibly alleges that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). An application that otherwise meets this standard may be denied on any of six grounds listed in 8 U.S.C. §§ 1158(b)(2)(A)(i–vi). Two such grounds are relevant here: under subclause (i), if the applicant "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion"; and under subclause (v), if the applicant "is described in subclause (I), (II), (III), (IV), or (VI) of [8 U.S.C. §] 1182(a)(3)(B)(i) . . . or [8 U.S.C. §] 1227(a)(4)(B)," which define terrorist activity, promotion of such activity, and association with groups conducting such activity. If asylum is granted, the asylee may apply for his spouse or child to join him. 8 U.S.C. § 1158(b)(3)(A). One year after being granted asylum, an asylee may apply to USCIS for permanent residence, if he "is admissible . . . as an immigrant . . . at the time of examination for [such] adjustment [of status]." *Id.* § 1159(b)(5).

Plaintiffs assert three APA-related claims: that (i) "collateral estoppel and/or res judicata" precluded USCIS from denying Rahman's applications, (ii) Defendants denied them due process, and (iii) USCIS erred in finding that the BNP and Rahman had links to terrorism (Plaintiffs raised this third claim for the first time in their opposition briefs). *See* Compl. 7–10; Pls.' Mems. 5–9.

1. **Preclusion**

Plaintiffs claim that "collateral estoppel and/or res judicata" preclude USCIS from denying Rahman's applications on terrorism-related grounds because (i) "whether the BNP was a terrorist organization, and whether Rahman knew or reasonably should have known that it was a terrorist

5

organization, [already had been] actually litigated" before the immigration judge; and (ii) the BIA had decided that Rahman's asylum application was not subject to a "terrorism bar." Compl. 7–8; *see also* Pls.' Mems. 5, 9–10.

Defendants make three responses. First, the immigration judge decided that Rahman credibly feared persecution, not whether the BNP was a terrorist organization or Rahman was inadmissible as a BNP member. Defs.' Mem. Supp. Mot. Dismiss or Summ. J. ("Defs.' Mem.") 9–10, ECF No. 17. Second, because neither party appealed the immigration judge's decision, the BIA decided nothing. *Id.* at 10. Third, preclusion is inappropriate because USCIS must reassess an asylee's admissibility when he seeks permanent residence. *Id.* at 10–12. If Defendants are correct, the Court lacks grounds to grant Plaintiffs the preclusive relief that they seek.

### a. Collateral estoppel

Collateral estoppel, or issue preclusion, "prevents a [party] from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003). It applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." *Kakar v. U.S. Citizenship & Immigr. Servs.*, No. 16-CV-5032, 2020 WL 1545422, at *10 (E.D.N.Y. Mar. 31, 2020) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)). Collateral estoppel (and res judicata) may apply to federal agencies' final determinations. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 151 (2015) ("[When] Congress has authorized agencies to

6

resolve disputes, 'courts may take it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident.'" (second alteration in original) (quoting *Astoria*, 501 U.S. at 108)).

Research has not revealed that the Court of Appeals for the Second Circuit has opined on whether an immigration court's grant of asylum means that, necessarily, the asylum applicant's links to terrorism were "actually litigated" before that court. Other courts of appeal have diverged on this question. *Compare Amrollah v. Napolitano*, 710 F.3d 568, 571–72 (5th Cir. 2013) (finding the "actually litigated" element "easily satisfied" because immigration judge's "ruling that [plaintiff] was admissible [for asylum] necessarily included, under the structure of [8 U.S.C. § 1158], a finding that [he] did not provide support to an individual or organization that engaged in terrorist activities"), *with Islam v. Dep't of Homeland Sec.*, 997 F.3d 1333, 1342 (11th Cir. 2021) (holding terrorism-related inadmissibility not actually litigated, and issue preclusion inapplicable, because "no one raised or submitted for determination at [the] asylum hearing whether the BNP qualified as a Tier III terrorist organization, let alone whether [plaintiff] had provided material support to such an organization"); *Fofana v. Mayorkas*, 4 F.4th 668, 671 (8th Cir. 2021), *cert. denied*, No. 21-916, 2022 WL 515966 (U.S. Feb. 22, 2022) (holding same because "government did not argue that [plaintiff's group] was a terrorist organization, that [his] solicitation of funds for the organization supported terrorism, or that [he] was inadmissible based on his solicitation of funds" and "immigration court granted asylum without addressing whether [plaintiff] was inadmissible because he solicited funds"); *Janjua v. Neufeld*, 933 F.3d 1061, 1067–68 (9th Cir. 2019) (holding same because plaintiff's "membership in and work for [later-deemed terrorist organization] were discussed at length at the [asylum] hearing . . . [but] for their relevance to [his] purported basis for persecution . . . [not] as potential grounds for inadmissibility").

7

While the Second Circuit has not opined on this question, a court in this district has. In *Kakar*, as here, an immigration judge granted the plaintiff asylum and USCIS later denied his application for permanent residence, due to his links to the Taliban in Afghanistan. *See* 2020 WL 1545422, at *1. Judge Matsumoto rejected the plaintiff's collateral-estoppel argument, in part, because "[n]o facts in the record support a finding that the immigration judge actually considered the issue of admissibility, even if the judge was obligated to do so." *Id.* at *11.

The Court agrees with Judge Matsumoto and those circuits which have held that a grant of asylum does not necessarily entail that an asylum applicant's inadmissibility on terrorism-related grounds was actually litigated in asylum proceedings. Accordingly, on the record currently before the Court, the second element of collateral estoppel is not met. The Complaint—and the documents attached or integral to it—indicate that whether the BNP was a Tier III terrorist organization and whether Rahman engaged in terrorist activity were issues not specifically raised, litigated, and decided by the immigration judge or BIA. The immigration judge's *pro forma* order granting Rahman's asylum application consists of a checked box next to the statement "Respondent's application[] for Asylum was granted," provides no rationale for that determination, and notes that "[i]f the proceedings should be appealed or reopened, the [immigration judge's] oral decision will become the official opinion in the case." *See* Compl. Ex. A, at 15. The Court has reviewed the recording of proceedings before the immigration judge, which confirms that whether the BNP is a terrorist organization or Rahman is a terrorist were not disputed issues there. Indeed, Plaintiffs acknowledge that the parties did not litigate before the immigration judge whether Rahman participated in terrorist activity. *See* Pls.' Mems. 5 ("[Defendants' lawyers] *should have* . . . submitted evidence of [Rahman's] advocacy, incitement, support, or commission of acts of terrorism . . . [so that] the issue of inadmissibility and bar to

8

eligibility for asylum on terrorism-related ground[s] *would have been* controverted and litigated in that proceeding." (emphasis added)). Moreover, contradicting Plaintiffs' allegation that the BIA ruled Rahman's asylum application was not subject to a terrorism bar, the Complaint notes that "[t]he Government did not take appeal against the [immigration judge's] decision . . . ." Compl. 6. Because the terrorism-related issues disputed here were not actually litigated and decided in Rahman's asylum proceedings, collateral estoppel is inapposite.

Accordingly, USCIS was not collaterally estopped from finding Rahman inadmissible on terrorism-related grounds—and denying his applications—because he was previously granted asylum. The Court cannot, therefore, grant Plaintiffs relief on that basis.

### b. Res Judicata

The doctrine of res judicata, or claim preclusion, "provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action." *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001). Pursuant to the doctrine of res judicata, "when a final judgment has been entered . . . [i]t is a finality as to the claim or demand in controversy . . . not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Nevada v. United States*, 463 U.S. 110, 129–30 (1983)). Where "a common-law principle is well established, as are the rules of preclusion, the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Channer*, 527 F.3d at 280 (quoting *Astoria*, 501 U.S. at 108).

Plaintiffs' argument that res judicata applies here rests on the premise that it "bars litigation of a claim that *could* have been raised in a prior proceeding," and the issue of Rahman's

inadmissibility due to his BNP membership could have been raised during his asylum hearing. Pls. Mems. 9. This argument is not without merit. The first step in determining whether res judicata applies is determining whether "the second suit involves the same 'claim'—or 'nucleus of operative fact'—as the first suit." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). Here, the operative facts were identical in the asylum and adjustment-of-status proceedings: Rahman's BNP membership, his activities on their behalf, and the BNP's interactions with the Awami League. Moreover, although applications for asylum and permanent residence are distinct claims, they are subject to the same terrorism bar. Thus, Defendants could have argued against Rahman's asylum application on terrorism grounds, just as they argued against his application for permanent residence on such grounds, but they did not.

Defendants respond that Congress has evinced its intention that rules of preclusion should not apply here because they would frustrate the statutory purpose of barring from the United States individuals with links to terrorism. *See* Defs.' Reply 6 n.1. The Second Circuit has said that "[w]hether it would be consistent with Congress's statutory scheme to apply res judicata and bar the DHS from lodging additional grounds of removal in successive immigration proceedings indeed may be a difficult question." *Channer*, 527 F.3d at 280. This question remains open. *See Ljutica v. Holder*, 588 F.3d 119, 127 (2d Cir. 2009) ("We . . . leave open the question whether res judicata bars the Government from asserting, in a second immigration proceeding, an argument it could have asserted, but did not, in a prior proceeding."); *see also Stephenson v. Lynch*, 634 F. App'x 328, 329 (2d Cir. 2016) (summary order) (finding elements of res judicata unmet); *Abbas v. Holder*, 572 F. App'x 37, 38 (2d Cir. 2014) (summary order) (same); *Garcia-Henriquez v. Holder*, 523 F. App'x 34, 35 (2d Cir. 2013) (same). However, the Second Circuit has also noted that legislation delineates "categor[ies] of aliens whom Congress repeatedly and unambiguously

10

has sought to remove" and that res judicata "in the immigration context . . . should not be applied so as to frustrate clearly expressed congressional intent." *Channer*, 527 F.3d at 280 n.4.

The Second Circuit's guidance in *Channer* leads the Court to agree with Defendants. It is apparent that Congress intended to exclude from the United States immigrants with links to terrorism. First, Congress enacted terrorism-related bars both to applicants for asylum and permanent residence. *See* 8 U.S.C. § 1158(b)(2)(A)(v) (barring asylum applicants for terrorist activities or association with terrorist organizations); *id.* § 1159(b)(5) (requiring asylee applicants for permanent residence to be "admissible," thus not inadmissible due to, *inter alia*, terrorist activities or association with terrorist organizations). Second, Congress requires an asylee applying for permanent residence to be admissible "at the time of examination" for such adjustment of status. 8 U.S.C. § 1159(b)(5). This statutory language evinces Congress's intent that a fresh determination of admissibility should be made when an asylee applies for permanent residence, but that a prior determination of his admissibility is not decisive. The Court disagrees with courts that have read this provision to require an updated admissibility determination only if relevant new facts arise in the interlude between a person's applications for asylum and lawful permanent residence. *See, e.g.*, *Khan v. Johnson*, 160 F. Supp. 3d 1199, 1207 (C.D. Cal. 2016). Nothing in the statutory language narrows the scope of the second admissibility determination.

Because the application of res judicata would frustrate Congress's intent to bar immigrants with links to terrorism, the Court holds that res judicata did not preclude USCIS from finding Rahman inadmissible on terrorism-related grounds—and denying his applications—despite his prior grant of asylum. The Court cannot, therefore, grant Plaintiffs relief on either basis of preclusion they advance and, thus, dismisses their APA claim that is premised on preclusion.

### 2. Due process

Plaintiffs claim that "Defendants [*sic*] refusal to provide for a further review of the denied application violates Due Process" and that "Defendants' failure to give Plaintiff[s] a meaningful opportunity to challenge the basis of the denial of [Rahman's applications] violated their substantive Due Process rights." Compl. 9. Defendants respond that Plaintiffs do not support these claims with factual allegations, and that they have abandoned them. *See* Defs.' Mem. 17–18; Defs.' Reply 6–7. Defendants are correct that the Complaint contains no factual allegations by which the Court may assess the plausibility of Plaintiffs' bare legal conclusions and that Plaintiffs' opposition briefs omit all mention of their due process claim. Accordingly, Plaintiffs fail to state a due process claim. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

The Court notes further that the Complaint does not indicate whether Plaintiffs availed themselves of opportunities for further review that were available to them. Each USCIS letter to Rahman denying his applications recites that Rahman could move to reopen or reconsider the applications. *See* Compl. Ex. B, at 28; *id.* at Ex. C, at 45, 60, 75. Plaintiffs do not allege that Rahman did so. Thus, it is not clear that Plaintiffs even gave Defendants an opportunity to deny them the due process that they claim to have been denied.

### 3. APA claim raised in Plaintiffs' opposition briefing

In their briefing, Plaintiffs argue for the first time that USCIS erred in finding the BNP to be a Tier III terrorist organization and, "even if it were, there is no basis or evidence to support any imputation [of] such status to . . . Rahman." Pls.' Mems. 2. Defendants argue that Plaintiffs may not raise this claim for the first time in briefing. *See* Defs.' Reply 8. The Court agrees. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citing *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977)); *see also Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("[A]llegations

12

added in opposition to a motion to dismiss cannot cure defects in the operative pleading." (quoting *Peffers v. Stop & Shop Supermarket Co. LLC*, No. 14-CV-3747, 2015 WL 5460203, at *5 n.5 (S.D.N.Y. June 9, 2015))). Accordingly, Plaintiffs' new APA claim, asserted belatedly in their opposition briefs, is dismissed.

### B. Attorney's Fees

Plaintiffs' claim for attorney's fees requires them to prevail on at least one other substantive claim. *See* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(b). As the Court will dismiss Plaintiffs' other claims, it must also dismiss their claim for attorney's fees.

## II. Motion for Summary Judgment

Having dismissed Plaintiffs' claims, the Court denies as moot Defendants' motion in the alternative for summary judgment. *See Weaver v. Boriskin*, No. 16-CV-688, 2017 WL 5201433, at *4 (E.D.N.Y. Sept. 30, 2017) ("Because the Court dismisses the claims on the pleadings, it denies as moot the summary judgment motions by [defendants]."), *aff'd in part, vacated in part on other grounds*, 751 F. App'x 96 (2d Cir. 2018); *Vassel v. Greystone Bank*, No. 12-CV-5704, 2013 WL 2395980, at *10 (E.D.N.Y. May 31, 2013) (same).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Defendants' alternative motion for summary judgment is **DENIED AS MOOT**.

SO ORDERED.

Dated:     Brooklyn, New York
           March 24, 2022

                                                /s/
                                          I. Leo Glasser
                                          Senior United States District Judge